UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIZABETH NEULIST,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>THE CITY OF NEW YORK, OFFICER TAU SAMUEL, OFFICER PETER GUIHEEN, OFFICER KIRTH BUCKLEY, OFFICER RUDOLPH SOMMER, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, DR. SANTIAGO GUILLERMO, DR. TARIQ MAHMOOD, DR. SALIM AL-SALEM, DR. SHANTI KOIRALA PRADHAN, DR. VINCENT SALVATORE CAPANELLI, DR. JOE HONG, DR. MICHAEL CHANG-HENG LIOU, AND DR. BUNN,<br><br>　　　　　　　　　　Defendants. | AMENDED COMPLAINT<br><br>Index No. 17-cv-08881-LAK-KNF |

　　　　Plaintiff Lizabeth Neulist, by her attorney at Rickner PLLC, complaining of the Defendants, respectfully alleges the following:

**PRELIMINARY STATEMENT**

　　　　1.　　Plaintiff Lizabeth Neulist, brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to the statutory and common law of the State of New York for assault, battery, and false imprisonment; and pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her rights under the Constitution of the United States of America.

　　　　2.　　She was arrested without probable cause by several officers from the New York City Police Department, falsely accused of being emotionally disturbed, and then admitted against her will at Metropolitan Hospital Center. She was never properly assessed by a physician,

1

nor was she diagnosed with any specific mental disorder, and there was no credible medical reason to believe she was a danger to herself or others. In fact, she consistently denied any suicidal ideation and repeatedly asked to be released. But the doctors refused. Worse, while trapped in the hospital, the hospital and doctors failed to properly treat her epilepsy, which caused multiple avoidable seizures. At one point the doctors – who knew she was epileptic – watched her have a seizure for over 20 minutes based on the entirely false and unfounded assumption that she was faking it, denying her drugs and treatment that could have alleviated the symptoms.

## JURISDICTION AND VENUE

3.	This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

4.	Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all New York State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

5.	Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where plaintiff Lizbeth Neulist resides and the defendants the City of New York and Metropolitan Hospital Center maintain their relevant places of business, and where the actions complained of herein occurred.

6. More than 30 days before the institution of this action, on November 14, 2016, a Notice of Claim was duly served upon and filed with the City of New York, and then, on November 15, 2016, separately, with the New York City Health and Hospitals Corporation, both by Plaintiff within the time required by General Municipal Law § 50(e).

7. On December 7, 2016, either the City of New York or the New York City Health and Hospitals Corporation, it was not clear in the letter, scheduled a hearing under General Municipal Law § 50(h) for January 20, 2017, and on December 28, 2016, the other municipality scheduled a hearing for February 9. 2017.

8. On January 17, 2017, former counsel for Plaintiff asked for these two hearings to be consolidated and adjourned to a single date in the future.

9. The municipalities agreed, but neither the City of New York nor the New York City Health and Hospitals Corporation ever actually rescheduled the hearings.

10. On September 21, 2017, after a request from counsel, the person assigned to schedule these hearings admitted that the hearings were adjourned and neither municipality ever offered or set a new date.

11. On September 22, 2017, the consolidated hearings were suddenly rescheduled for December 28, 2017 – after the deadline to file this action.

12. As such, a hearing under General Municipal Law § 50(h) is not necessary before filing the present action.

## JURY DEMAND

13. Plaintiff Lizabeth Neulist respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

14. At all times hereinafter mentioned, the parties were as follows:

15. Plaintiff Lizabeth Neulist ("Ms. Neulist" or "Plaintiff") was a resident of the County of New York, City and State of New York.

16. Defendant the City of New York (the "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

17. Defendant, the City of New York maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation.

18. Defendant Tau Samuel ("Samuel"), shield number 17558, was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is sued in his individual capacity.

19. Defendant Samuel is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.

20. Defendant Peter Guiheen ("Guiheen"), tax number 901648, was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is sued in his individual capacity.

21. Defendant Guiheen is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.

22. Defendant Kirth Buckley ("Buckley"), shield number 9365, was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is sued in his individual capacity.

23. Defendant Buckley is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.

24. Defendant Rudolph Sommer ("Sommer"), shield number 20988, was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is sued in his individual capacity.

25. Defendant Sommer is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.

26. Collectively, Defendant Officers Samuel, Guiheen, Buckley, and Sommer are referred to herein as the "NYPD Defendants".

27. Defendant New York City Health and Hospitals Corporation was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and maintains Metropolitan Hospital Center, a duly authorized public hospital ("Metropolitan").

28.     Defendant Dr. Santiago Guillermo ("Dr. Guillermo") was a physician duly licensed to practice medicine in the State of New York, and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Plaintiff. He was an attending physician for psychiatry at Metropolitan, and was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

29.     Defendant Dr. Tariq Mahmood ("Dr. Mahmood") was a physician duly licensed to practice medicine in the State of New York, and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Plaintiff. He was an attending physician for psychiatry at Metropolitan, and was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

30.     Defendant Dr. Salim Al-Salem ("Dr. Al-Salem") was a physician duly licensed to practice medicine in the State of New York, and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Plaintiff. He was an attending physician for psychiatry at Metropolitan, and was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

31.     Defendant Dr. Shanti Koirala Pradhan ("Dr. Pradhan") was a physician duly licensed to practice medicine in the State of New York, and as such held herself out as duly qualified to render proper and adequate medical services to members of the general public, including Plaintiff. She was an attending physician for internal medicine at Metropolitan, and

was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

32.     Defendant Dr. Vincent Salvatore Capanelli ("Dr. Capanelli") was a physician duly licensed to practice medicine in the State of New York, and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Plaintiff. He was an attending physician for internal medicine at Metropolitan, and was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

33.     Defendant Dr. Joe Hong ("Dr. Hong") was a physician duly licensed to practice medicine in the State of New York, and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Plaintiff. He was a physician was a physician in the psychiatry department at Metropolitan, and was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

34.     Defendant Dr. Michael Chang-Heng Liou ("Dr. Liou") was a physician duly licensed to practice medicine in the State of New York, and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Plaintiff. He was a physician in the psychiatry department at Metropolitan, and was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

35.     Defendant Dr. Bunn ("Dr. Bunn") first name unknown, was a physician duly licensed to practice medicine in the State of New York, and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public,

including Plaintiff. He was a physician in the psychiatry department at Metropolitan, and was an employee, agent, servant and/or independent contractor retained by Metropolitan to render medical services, care and treatment to patients seeking medical care at Metropolitan.

36. Collectively, the doctors are referred to herein as the "Doctor Defendants".

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

**Ms. Neulist is Arrested Without Probable Cause**

37. On August 14, 2016, Ms. Neulist, frustrated, wrote to Time Warner about problems with her cable and her computer, and in jest wrote that the problem was so frustrating she might jump off a bridge.

38. This, apparently, triggered a visit by the NYPD Defendants – 3 days later, on August 17, 2016.

39. Plaintiff was in her home, partially clothed. The multiple officers partially pushed their way into her apartment, which was clean. Plaintiff sat down on the bed.

40. The officers started yelling at her about being suicidal, which confused Plaintiff, who had entirely forgotten about the offhand comment to Time Warner.

41. They jumped on the bed, wrenched her arms behind her back, and handcuffed her, injuring her left shoulder in the process.

42. Plaintiff was taken to an ambulance and then driven to Metropolitan.

43. The NYPD Defendants never had any probable cause or justification for forcibly detaining Plaintiff or for taking her to Metropolitan as an alleged emotionally disturbed person.

**Ms. Neulist is Involuntarily Committed Without Justification**

44. There was no valid medical justification for detaining Ms. Neulist.

45. Plaintiff was taken to Metropolitan, in handcuffs, and admitted to the Emergency Department at 9:09 pm., August 17, 2016.

46. At 9:19 p.m., there was a triage assessment by a registered nurse.

47. At 9:25 p.m., a registered nurse checked Plaintiff into the psychiatric emergency department at Metropolitan.

48. At 9:49 p.m., there was a psychosocial referral by a registered nurse.

49. At 6:05 a.m., the following day, August 18, 2016, Plaintiff was evaluated by a physician – but only for the injury to her shoulder – which was deemed not life threatening, and she was found physically capable of psychiatric admission.

50. At 12:12 p.m., Plaintiff's admission was converted from an emergency patient status to an in-patient status.

51. At 9:39 p.m., a registered nurse assessed Plaintiff for admission to 9 West, a psychiatric wing of Metropolitan used for involuntary commitment.

52. On August 19, 2016, at around 1:35 p.m., one of Plaintiff's regular doctors, Dr. Marianne Legato, called Dr. Santiago and told him that Plaintiff sounded normal over the phone. Dr. Santiago refused to accept this and insisted that Plaintiff must remain admitted against her will.

53. Later that evening, Dr. Legato spoke to Dr. Hong and Dr. Bunn, and they too insisted that Plaintiff must remain admitted against her will – at least until her mother could come and get her. Plaintiff is an adult who has lived alone for many years and there was no reason to hold her against her will for days simply to wait for a parent.

54. Throughout her forced detention, Plaintiff denied any suicidal ideation.

55. From being admitted on August 17, 2016 to being released on August 22, 2016, the attending physicians were Dr. Santiago, Dr. Mahmood, and Dr. Al-Salem, and they were assisted by Dr. Hong, Dr. Liou, and Dr. Bunn. And yet not one of them ever had a legitimate

medical reason for forcing Plaintiff to remain confined, nor did they intervene to ensure that she was not confined without a valid medical reason.

56. Plaintiff was discharged at 2:35 p.m. on August 22, 2016, and allowed to return to her apartment.

**Ms. Neulist is Not Properly Treated for her Epilepsy While Forcibly Detained**

57. From the moment she was admitted, Metropolitan knew that Plaintiff had epilepsy, which was being treated by a carefully selected group of drugs, to prevent seizures. Any sudden change in this medication regimen could – and did – cause a drastic increase in the number of seizures.

58. Plaintiff, who has been managing her epilepsy for years, told Metropolitan and its employees exactly what medications she took and when. But they entirely failed to administer the medications correctly, in three ways.

59. *First*, Metropolitan did not have Felbatol, a powerful anti-convulsant. Plaintiff was denied this medication for at least 2 days.

60. *Second*, Metropolitan and its employees did not administer the medication she had been taking on the same schedule.

61. *And third*, Metropolitan and its employees forced Plaintiff to start taking Risperdal, which has a known side effect of making seizures *worse*.

62. This was exacerbated by the fact that Plaintiff did not have a neurology consultation until August 19, 2016 at 12:19 p.m., when she had been in the hospital for almost 2 full days. And the attending neurologist who performed the consultation, Dr. Capanelli, acknowledged that Plaintiff was not getting her medications as she was regularly prescribed, that someone needed to contact Plaintiff's regular neurologist who treated her for epilepsy, and that

Metropolitan did not have Felbatol. Plaintiff also told Dr. Capanelli that she had started having more seizures.

63.     But nobody, including Dr. Capanelli, ever contacted her regular doctor. And Plaintiff was not given Felbatol until late in the evening on August 19, 2016 or early August 20, 2016.

64.     Predictably, Plaintiff started having far more seizures than she normally faced. At least two were particularly severe.

65.     On August 20, 2016 at 1:45 p.m., Plaintiff started having a seizure. She was partially responsive, so the attendings Dr. Santiago and Dr. Padhan decided that she must have been faking it – and let her convulse on the ground without any treatment whatsoever.

66.     Not all seizures result in the stereotypical shaking on the ground while totally non-responsive. For example, focal onset seizures can occur while the patient is aware or partially aware, and the patient can respond.

67.     Drugs such as Ativan can be used to control or ameliorate the effects of seizures.

68.     But Dr. Santiago and Dr. Padham let Plaintiff suffer through her seizure for at least 20 minutes.

69.     She had another seizure on August 21, at around 4:30 p.m., which was also severe enough to attract the attention of the attending physicians, although this time she was eventually given Ativan.

70.     In addition, she had several other seizures that were less severe, and were not immediately noticed by the Doctor Defendants or Metropolitan's other employees.

71.     Had Plaintiff been treated correctly, these seizures could have been avoided.

## INJURIES AND DAMAGES

72.     This action seeks damages on behalf of Plaintiff for the extraordinary emotional pain and suffering, loss of liberty, and injuries to her person, that Plaintiff was forced to endure as a consequence of Defendants' decidedly wrongful actions.

73.     The conduct of the NYPD Defendants and Doctor Defendants who acted at all times under color of state law and within the scope of their employment and authority, directly and proximately caused Plaintiff to suffer loss of liberty, serious physical and emotional injury, mental anguish, humiliation and embarrassment, as well as injury to her left shoulder and the destabilization of a hematoma requiring surgical intervention.

74.     The NYPD Defendants, Doctor Defendants, and Metropolitan acted with reckless and wanton disregard for the rights of Plaintiff.

75.     As a result of all of the acts alleged herein, Plaintiff suffered and continues to suffer physical and mental pain and anguish, and emotional distress.

76.     All of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules 1602 with respect to joint and several liability.

## FIRST CLAIM FOR RELIEF:
## ASSAULT AND BATTERY UNDER STATE LAW
## AGAINST THE NYPD DEFENDANTS AND CITY

77.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

78.     On August 17, 2016, the NYPD Defendants intentionally made physical contact with Plaintiff, and a reasonable person would find this contact offensive.

79.     This physical contact was without Plaintiff's consent.

80. Defendant the City is vicariously liable for the actions of the NYPD Defendants, and thus for Plaintiff's injury and damages, because the NYPD Defendants were acting in furtherance of the City's business and within the scope of the City and the NYPD's authority.

81. As a result of the above impermissible conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

## SECOND CLAIM FOR RELIEF:
## FALSE IMPRISONMENT UNDER STATE LAW
## AGAINST THE NYPD DEFENDANTS, CITY,
## DOCTOR DEFENDANTS, AND METROPOLITAN

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

83. On August 17, 2016, Plaintiff was arrested, handcuffed, and detained in the absence of probable cause by the NYPD Defendants.

84. That at all times hereinafter mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

85. Plaintiff was conscious of the confinement and did not consent to such confinement.

86. Defendant the City is vicariously liable for the actions of the NYPD Defendants, and thus for Plaintiff's injury and damages, because the NYPD Defendants were acting in furtherance of the City's business and within the scope of the City and the NYPD's authority.

87. Plaintiff was then detained in the absence of probable cause or justification by the Doctor Defendants and Metropolitan, from August 17, 2016 to August 22, 2016, without Plaintiff's consent and in violation of the Mental Health Laws.

88. Defendant Metropolitan is also vicariously liable for the actions of the Doctor Defendants, and thus for Plaintiff's injury and damages, because the Doctor Defendants were acting in furtherance of Metropolitan's business and within the scope of the Metropolitan's authority.

89. As a result of the above impermissible conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

## THIRD CLAIM FOR RELIEF:
## MEDICAL MALPRACTICE UNDER STATE LAW
## AGAINST THE DOCTOR DEFENDANTS, AND METROPOLITAN

90. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

91. Despite the fact that the Doctor Defendants and Metropolitan had no objective information whatsoever to believe that Plaintiff was a danger to herself or anyone else, Plaintiff was involuntarily hospitalized and remained there for six days.

92. The Doctor Defendants and Metropolitan never had any basis – as is required by the Mental Health Law and United States Constitution – for any findings that the Plaintiff was a danger to herself or anyone else, and forcibly restrained Plaintiff and permitted forcible restraint without considering less restrictive alternatives even though no emergency existed and Plaintiff was not dangerous to herself or others, in violation of Plaintiff's rights.

93. Further, in the alternative, if there was any such determination, and it was wrongfully withheld from Plaintiff and her counsel, any such determination that was made by the Doctor Defendants or Metropolitan finding that Plaintiff was a danger to herself or anyone else was not made with any objective criteria or any reasonable degree of accuracy.

94. The Doctor Defendants and Metropolitan, jointly and severally, and individually, departed from good and accepted standards of medical care, and were negligent and careless in the service rendered for and on behalf of Plaintiff in failing to recognize that she was not emotionally disturbed and in need of involuntary confinement; in improperly and negligently documenting Plaintiff's medical conditions on her chart on the basis of unsubstantiated hearsay; and in failing to properly treat her epilepsy.

95. As a result of the above impermissible conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

### FOURTH CLAIM FOR RELIEF:
### FAILURE TO TRAIN UNDER STATE LAW
### AGAINST METROPOLITAN

96. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

97. Defendant Metropolitan selected, hired, trained, retained, assigned and supervised all members of its staff, including the Doctor Defendants individually named above.

98. Defendant Metropolitan was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of its staff including the Doctor Defendants individually named above, in particular in its failure to train employees as to how to recognize seizures and treat epileptics.

99. As a result of the above impermissible conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

**FIFTH CLAIM FOR RELIEF:**
**FALSE ARREST AND IMPRISONMENT UNDER 42 U.S.C. § 1983**
**AGAINST THE NYPD DEFENDANTS,**
**DOCTOR DEFENDANTS, AND METROPOLITAN**

100. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

101. On August 17, 2016, Plaintiff was arrested, handcuffed, and detained in the absence of probable cause by the NYPD Defendants.

102. That at all times hereinafter mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

103. Plaintiff was conscious of the confinement and did not consent to such confinement.

104. Plaintiff was then detained in the absence of probable cause or justification by the Doctor Defendants and Metropolitan, from August 17, 2016 to August 22, 2016 without Plaintiff's consent and in violation of the Mental Health Laws.

105. These actions were in violation of Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

106. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

**SIXTH CLAIM FOR RELIEF:**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**
**AGAINST THE NYPD DEFENDANTS**

107. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

108. Even assuming arguendo that Plaintiff's arrest was lawful, the NYPD Defendants engaged in the use of force that was excessive and objectively unreasonable.

109. The behavior of the NYPD Defendants was the proximate cause of the left shoulder injury that Plaintiff sustained on the date of her arrest.

110. These actions were in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

111. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

**SEVENTH CLAIM FOR RELIEF:**
**FAILURE TO INTERCEDE UNDER 42 U.S.C. § 1983**
**AGAINST THE DOCTOR DEFENDANTS AND METROPOLITAN**

112. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

113. The Doctor Defendants and Metropolitan had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in their presence through forced detention without a legal justification or medical basis.

114. Doctor Defendants and Metropolitan further violated Plaintiff's constitutional rights when they failed to intercede and prevent the violation or further violation of Plaintiff's constitutional rights and the injuries or further injuries caused as a result of said failure.

115. As a result of this failure to intercede when Plaintiff's constitutional rights were being violated in defendants' presence, Plaintiff sustained, inter alia, physical and emotional injuries.

## EIGHTH CLAIM FOR RELIEF:
## VIOLATION OF DUE PROCESS UNDER 42 U.S.C. § 1983
## AGAINST THE DOCTOR DEFENDANTS AND METROPOLITAN

116. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

117. The decision to restrict Plaintiff's liberty and hold her against her will was not made in accordance with a standard that promised a reasonable degree of medical accuracy.

118. The decision to medicate Plaintiff against her will was not made in accordance with a standard that promised a reasonable degree of medical accuracy.

119. Defendants' decision to hold and medicate Plaintiff was objectively unreasonable and fell substantially below generally accepted medical standards so as to deprive her of due process of law.

120. As a result of the foregoing, Plaintiff's liberty was restricted, she was put in fear for her safety, and she was humiliated and subjected to restraints, without probable cause.

121. These actions were in violation of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

122. As a result of the above unconstitutional conduct, Plaintiff was caused to suffer physical, psychological and emotional injuries, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom

**WHEREFORE**, Plaintiff Lizbeth Neulist demands the following relief jointly and severally against all of the Defendants:

  a. Compensatory damages;
  b. Punitive damages;
  c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
      April 30, 2018

Rickner PLLC

By:     /s/

Rob Rickner

233 Broadway Suite 2220
New York, New York 10279
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*